#906

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 85-1476

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 36,
and
SERVICE EMPLOYEES LOCAL 36/BOLR PENSION FUND
SERVICE EMPLOYEES LOCAL 36/BOLR WELFARE FUND

v.

PULLMAN, ALLAN
ATLANTIC REALTY GROUP, INC.
MEDICAL ARTS REALTY CORPORATION
MEDICAL TOWER LIMITED
SHELDON EQUITIES, INC.
SHELDON HOLDING CORPORATION
2500 REED STREET, INC.

Allan Pullman,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 83-5252)
District Judge: John P. Fullam

Submitted Under Third Circuit Rule 12(6)
March 7, 1986
Before: ALDISERT, Chief Judge, and SEITZ and ADAMS,
Circuit Judges.

(Filed    MAR 10    , 1986)

MEMORANDUM OPINION OF THE COURT

ALDISERT, <u>Chief Judge</u>.

The question for decision in this appeal by Allan Pullman is whether the district court abused its discretion when as a sanction for civil contempt it gave Pullman the alternative of paying amount agreed to in a consent judgment or be incarcerated. The parties agree that the standard of review is abuse of discretion. We find no abuse and affirm.

I.

Local 36 of the Service Employees International Union, and its pension and welfare funds, brought an action to recover unpaid wages, pension, and health and welfare contributions due and owing to or on behalf of members of Local 36 employed at three Philadelphia buildings--2500 Reed Street, the Medical Arts Building and the Medical Towers Building, owned, respectively, by 2500 Reed Street, Inc., Sheldon Equities, Inc. and the Medical Towers Limited, all defendants in the court below. In addition, Atlantic Realty, Inc., and Medical Arts Realty, Inc., managers of 2500 Reed Street and the Medical Arts Building, respectively, were defendants, as was Allan Pullman, an individual who owns or controls the entity defendants.

Claims against the entity defendants under the Employee Retirement Income Security Act, 29 U.S.C. § 1132 (ERISA) and the National Labor Relations Act, 29 U.S.C. § 185 (NLRA), were

2

asserted jointly against appellant Pullman on the basis that he was alleged to be an employer within the meaning of these federal statutes. In addition, a claim was stated against Pullman under the Pennsylvania Wage Payment and Collection Act, 43 Pa. Cons. Stat. Ann. § 260.1 et. seq. (Purdon 1964 & Supp. 1985), which allows an agent for a corporate employer to be held personally liable for unpaid wages including required health and welfare contributions. Id. § 260.2a. All claims asserted by the plaintiffs against all defendants were settled by the entry of a Stipulation and Consent Decree on June 26, 1984, which terminated the federal claims asserted personally against Pullman as a joint employer and dismissed without prejudice the state law claim asserted against him personally.

On May 24, 1985, plaintiffs filed a Petition for Contempt alleging nonpayment by the defendants of their obligations under the Stipulation and Consent Decree. It requested that the court impose a $500 per day fine on the defendants until full payment was made. After a hearing, the court on July 9, 1985, held the defendants in contempt and ordered payment of all amounts due pursuant to the Decree ($205,837.40) within five days. No sanction was imposed.

On July 19, 1985, plaintiffs filed a second Petition for Contempt alleging that only partial payment had been made by the defendants pursuant to the court's order of July 9, 1985. It requested specifically that Allan Pullman be incarcerated until defendants paid the entire amount due under the Consent Decree and the court's order of July 9, 1985.

We have stressed that the overriding purpose to be served by civil contempt is to benefit the complaining party. Latrobe Steel Co. v. United Steelworkers, 545 F.2d 1336, 1343 (3d Cir. 1976); Cromaglass Corp. v. Ferm, 500 F.2d 601, 604 (3d Cir. 1974). In Latrobe Steel Co., we said:

> [T]he objective of a civil contempt decree is to benefit the complainant. Civil contempt proceedings are instituted primarily on the motion of the Plaintiff and are part of the underlying action.
>
> [C]ivil contempt itself may be divisible into two sub-categories which benefit the aggrieved party in distinctive ways. Remedial or compensatory actions are essentially backward looking, seeking to compensate the complainant through the payment of money for damages caused by past acts of disobedience. Coercive sanctions, in contrast, look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction by setting forth in advance the penalties the court will impose if the party deviates from the path of obedience.

545 F.2d at 1343-44 (footnotes omitted). We also have detailed the range of permissible sanctions:

> Trial judges have a variety of weapons with which they can achieve these ends. They may impose an indeterminate period of confinement which may be brought to end only by the contemnor's ultimate adherence to the court order. Alternatively, the court may levy a fine

We have considered all of the contentions presented by the appellant. The judgment of the district court will be affirmed in all respects.

_____

TO THE CLERK:

    Please file the foregoing opinion.

 

_____
                                                      Chief Judge

Attorneys for
...  ...  ...t pursuant
t... ...77 (...) ...deral Rules of
Civil Procedures.

UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF WISCONSIN

AUG 2 8 ...

---

BUILDING TRADES UNITED PENSION
TRUST FUND, CONSTRUCTION WORKERS
HEALTH FUND, BUILDING & PUBLIC
WORKS LABORERS VACATION FUND, AND
ALEX JORDAN

        Plaintiffs        Case No. 83 C 1871

v

EATONS ASPHALT SERVICE

        Defendant

---

## FINDINGS OF CONTEMPT
## AND
## ORDER

---

The plaintiffs filed a complaint on November 17, 1983 along with a Request for Temporary Restraining Order and the Court issued Findings of Fact and Conclusions of Law along with an Order requiring Eatons Asphalt Service, their officers, stockholders and agents to pay current contributions to plaintiff trust funds as contributions accrued commencing with the work month of January, 1984 which become due on February 15, 1984. That Order was entered on March 23, 1984.

Plaintiffs filed a Motion for Contempt of Court and a Stipulation and Order was entered on March 29, 1985 requiring defendant, Eatons Asphalt Service to pay contributions which were stipulated to be due in the amount of $23,774.07 pursuant to a payment schedule. This Court, on March 29, 1985, ordered

Building Trade United Pension Trust
Fund v. Eatons Asphalt Service 1986

Eatons Asphalt Service Inc. to pay the stipulated payments in accordance with the negotiated payment schedule and specifically ordered the sum of $3,000 to be paid on October 15, 1985 and the sum of $4,928.55 to be paid on November 15, 1985. In addition the Court ordered Eatons Asphalt Service Inc. to pay all current contributions as they accrue on the 15th of each month following the month worked; said payments were to be received in the office of Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman s.c. by 12 noon on the 25th day following the month worked. The Court stated in that order:

> "If any payment is not received, such payment will be considered an additional contempt of court and the matter will be referred to the court for appropriate action."

The Order further provided that,

> "IT IS FURTHER ORDERED, that imposition of sanctions on the contempt of court findings be deferred pending the outcome of the payment schedule. ... If, however, there is a default in the payment of any payment on the payment schedule or any current contributions, plaintiff shall have the right to return this matter to the Court for the imposition of sanctions against the defendant on the contempt of court findings."

Plaintiffs filed an Order to Show Cause on August 18, 1986 along with a Motion for Contempt and an Affidavit which recited the fact that Eatons Asphalt Service has failed to comply with the Stipulation and Order for Preliminary Injunction entered on March 26, 1986 and that the company had failed to submit $3,000 which was due on October 15, 1985 and $4,928.51 due on November 15, 1985 as well as current contributions for the work

month of December, 1985 through July, 1986. The Affiavit further recited that defendant had not permitted the auditor of the Building Trades United Pension Trust Fund to audit the payroll records of defendant to verify the amounts presently due and owing.

Leo Eaton, the principal officer of the corporation, appeared in court on August 26, 1986 and admitted that the October 15 and November 15, 1985 payments had not been made and that current contributions had not been made after November, 1985. Mr. Eaton denied refusing to present the books and records of Eaton's Asphalt Service for audit but admitted that the audit had not been conducted and that the auditor had contacted Eaton's Asphalt Service with a request for an audit.

On the record as a whole the Court finds that Eatons Asphalt Service through their principal corporate officer, Leo Eaton, has failed to purge the contempt by failing to submit payments of $3,000 due on October 15, 1985, and $4,928.51 due on November 15, 1985 as well as failing to submit current reports and payments for the work month of December, 1985 through July, 1986 and by failing to permit the auditor of the Building Trades United Pension Trust Fund to conclude an audit of the company's books and records.

## ORDER

The Court imposes a ten (10) day jail term upon Leo Eaton, the principal officer of Eaton's Asphalt Service: Such jail term to commence on September 17, 1986. The jail term, however,

shall not commence until there is a hearing at 1:30 p.m. on September 17, 1986 to determine whether the Court should reduce or suspend sanctions based upon the conduct of defendant between August 26, 1986 and September 17, 1986. The Court further orders Leo Eaton and Eaton's Asphalt Service to permit an audit of the company's books and records and to make satisfactory arrangements to pay all of the previously ordered payments and to submit all of the current reports and payments required by previous orders of this Court.

Dated at Milwaukee, Wisconsin this 28th day of August, 1986.

BY THE COURT

_Robert W. Warren_
JUDGE ROBERT W. WARREN